UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JACOB M.,[1]

                                    Plaintiff,                  Case # 20-CV-1093-FPG

v.                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

## INTRODUCTION

Plaintiff Jacob M. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 14. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In February 2017, Plaintiff applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 62, 71. He alleged disability since February 2016 due to back issues, post-concussion syndrome, neck issues, chest issues, and anxiety. *Id.* In May 2019,

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 10.

Administrative Law Judge William M. Weir ("the ALJ") issued a decision finding that Plaintiff is not disabled.  Tr. 15-27.  In June 2020, the Appeals Council denied Plaintiff's request for review.  Tr. 1-4.  This action seeks review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).[3]  If so, the claimant is not disabled.  If not, the ALJ

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations.  *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  *Id.* § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff has severe impairments of degenerative disc disease, anxiety disorder, attention deficit hyperactive disorder ("ADHD"), substance use disorder, adjustment disorder, and a panic disorder.  *Id.*  At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any Listings impairment.  Tr. 18.

Next, the ALJ determined that Plaintiff retains the RFC to perform light work with additional non-exertional limitations.  Tr. 20.  At step four, the ALJ found that Plaintiff could not perform any past relevant work.  Tr. 26.  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 26-27.  The ALJ therefore found that Plaintiff is not disabled.  Tr. 27.

### II.    Analysis

Plaintiff argues that remand is warranted on three grounds.  First, the ALJ cherry-picked the opinion evidence "by crediting information consistent with the ALJ's finding of non-disability while ignoring or discrediting inconsistent information from the same sources without providing plausible reasons."  ECF No. 11-1 at 19.  Second, the ALJ erroneously relied on his own lay opinion to determine that Plaintiff needed "the option to sit or stand every 20 minutes."  Tr. 20; ECF No. 11-1 at 22.  Third, the ALJ failed to properly consider the opinion of Plaintiff's treating physician, Robert Young, M.D.  *Id.* at 24-27.  The Court concludes that none of these grounds warrants remand.

### a.  Cherry-Picking Evidence

Plaintiff argues that the ALJ failed to provide plausible reasons for according partial weight to the opinions of G. Kleinerman, a state disability examiner, and Gregory Fabiano, Ph.D., a consultative examiner.  ECF No. 11-1 at 20.  From this, Plaintiff infers that the ALJ simply "cherry-picked" the medical opinion evidence to support his RFC determination.

The Court disagrees.  "An ALJ is free to credit some portions of opinions and reject others, but, when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an ALJ must have a sound reason for weighting portions of the same-source opinions differently."  *Cromwell v. Comm'r of Soc. Sec.*, No. 18-CV-1194, 2020 WL 409989, at *3 (W.D.N.Y. Jan. 24, 2020) (internal quotation marks and brackets omitted); *see also Portal v. Saul*, No. 17-CV-5503, 2019 WL 4575391, at *4 (E.D.N.Y. Sept. 20, 2019) ("An ALJ is certainly permitted to assign different weights to different portions of a medical opinion, but when the ALJ uses a portion of a given opinion to support a finding, while rejecting another portion of that opinion, the ALJ must have a sound reason for this discrepancy." (internal quotation marks omitted)).  The ALJ's decision makes clear that he had sound reasons for rejecting certain limitations identified by Dr. Fabiano and Kleinerman—*i.e.*, that Plaintiff was moderately limited in his ability to perform activities in a schedule, maintain attendance, sustain an ordinary routine, and be punctual—while adopting others.

In his initial applications, Plaintiff stated that in 2003—when he was sixteen years old— he was in a car accident that caused significant injuries.  *See* Tr. 37, 62, 71.  Plaintiff claims that, among other things, the accident caused a concussion and left him with severe mental limitations. *See* Tr. 37, 62.  He alleges ongoing memory deficits, stating that, for example, he was "pulled out" of school after the accident "because [he] couldn't remember where [he] was . . . during school,"

Tr. 37, and that he could not follow even simple instructions at work without forgetting them.  *See* Tr. 38 (stating that, while working in construction, he would be "told to go to the trailer and get a tool," and he would "come back without the tool [and] ask them again what I went for").  At the hearing, Plaintiff testified that he had a "weak" attention span and had difficulty finishing tasks at home.  Tr. 43-44.  In a questionnaire, Plaintiff wrote that he suffers from slow speech, is easily sidetracked, cannot concentrate when conversing with others, has left the toaster oven on "due to forgetfulness," needs reminders when shopping due to his attention span, and cannot, because of his memory, maintain a bank account.  Tr. 216, 217, 218, 220.

The medical record does not fully support Plaintiff's claimed difficulties.  In 2013, Plaintiff was diagnosed with a traumatic brain injury in connection with his car accident, but that diagnosis appears to have been largely based on Plaintiff's self-reported symptoms.  *See* Tr. 393-94.  Despite his claimed symptoms, the ALJ noted that Plaintiff was "able to work consistently for multiple years" after the accident, Tr. 18, is able to drive a motorcycle, and "help[ed] his mother redo a bathroom."  Tr. 19; *see also* Tr. 23 (citing record evidence of Plaintiff's work history).  Plaintiff has received no ongoing treatment for any traumatic brain injury or post-concussion syndrome, Tr. 18, and his mental-health treatment notes from 2015, 2016, and 2017 consistently show intact thought processes, logical thought content, fair to good insight, no speech concerns, and an ability to focus and remain attentive with medication.  *See, e.g.*, Tr. 275-76, 301-02, 335-36, 354-55, 367-68, 373-74, 389-90; *see also* Tr. 305, 337, 370, 391, 452, 464.

At a May 2017 psychiatric consultative examination with Dr. Fabiano, Plaintiff reported difficulties with memory and concentration.  Tr. 402.  His mental status examination showed average intellectual functioning, intact attention and concentration, and only mildly impaired memory skills, however.  Tr. 403.  Dr. Fabiano opined that, *inter alia*, Plaintiff was mildly limited

in his ability to understand and apply simple directions and instructions; was moderately limited in his ability to interact adequately with others; and was moderately limited in his ability to sustain concentration, perform a task at a consistent pace, and sustain regular attendance at work.  Tr. 404.

The state disability examiner, G. Kleinerman, similarly opined in May 2017 that Plaintiff was not significantly limited in his ability to carry out short and simple instructions but was moderately limited in his ability to maintain attention and concentration for extended periods and ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  Tr. 79.

The ALJ gave partial weight to Dr. Fabiano's and Kleinerman's opinions.  Tr. 24.  In particular, he rejected both sources' view that Plaintiff would be moderately limited in his ability to maintain attendance, perform activities in a schedule, and be punctual.  The ALJ believed that limitation was inconsistent with (a) the mental-health records, which did not reflect "significant and continued cognitive deficits," Tr. 19, (b) Plaintiff's daily activities, including his work history, which "suggest[ed] a greater functional ability than alleged," Tr. 23, (c) the absence of ongoing treatment for such issues, *id.*, and (d) Plaintiff's inconsistent reports about his abilities and symptoms, *id.*[4]  The ALJ found that Plaintiff's mental impairments, including his "poor focus," limited him to simple work and occasional interactions with others, but he did not include any other limitations relating to attendance or attention.  Tr. 20, 22.

Contrary to Plaintiff's argument, the ALJ's decision reveals several reasons why the ALJ rejected the portions of Dr. Fabiano's and Kleinerman's opinions relating to attendance and punctuality.  Plaintiff was able to work for many years after his car accident.  *See Gove v. Saul,*

---

[4] While the ALJ did not expressly list these reasons in the section discussing Dr. Fabiano's and Kleinerman's opinions, his rationale can be gleaned from the decision as a whole.  *Cf. Tasha S. v. Comm'r of Soc. Sec.*, No. 20-CV-421, 2021 WL 3367588, at *5 (W.D.N.Y. Aug. 3, 2021) ("An ALJ's failure to fully express her reasoning does not justify remand so long as the Court can glean the rationale of the decision." (internal brackets omitted)).

No. 19-CV-6839, 2020 WL 6712201, at *4 (S.D.N.Y. Nov. 16, 2020) (ALJ provided good reason for rejecting treating source's limitation on attendance, where said limitation "was inconsistent with [the claimant's] reported daily activities"). There is no record of ongoing treatment for the post-concussion syndrome or traumatic brain injury, and Plaintiff's mental-health records routinely show that, at appointments, Plaintiff had intact thought processes and the ability to focus and remain attentive with medication.[5] *See Moore v. Comm'r of Soc. Sec.*, No. 19-CV-1850, 2020 WL 5077347, at *3 (E.D.N.Y. Aug. 27, 2020) (collecting cases and concluding that ALJ properly rejected opinions which were "not in harmony with years of contemporaneous notations"); 20 C.F.R. § 404.1527(c)(4) (stating that an ALJ generally gives more weight to a medical opinion that is consistent "with the record as a whole"). Finally, Dr. Fabiano and Kleinerman based the identified limitations in part on Plaintiff's subjective reporting, which the ALJ found to be not reliable. *See* Tr. 23; *see also Jackson v. Berryhill*, No. 17-CV-6268, 2018 WL 3306193, at *5 (W.D.N.Y. July 5, 2018) ("When the ALJ finds the claimant's allegations not credible, he is entitled to discount the opinion of a medical source who relied on the claimant's subjective complaints.").

Accordingly, the Court rejects Plaintiff's argument that the ALJ failed to provide "any plausible explanation" for his decision to accord partial weight to Dr. Fabiano's and Kleinerman's opinion. ECF No. 11-1 at 20.

---

[5] In opposition, Plaintiff points to some evidence that supports his position that he has a "traumatic brain injury resulting in memory deficits." ECF No. 11-1 at 23. The mere existence of contrary evidence does not justify remand, however. "[U]nder the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [his] position." *Gonzalez-Cruz v. Comm'r of Soc. Sec.*, 294 F. Supp. 3d 164, 187 (W.D.N.Y. 2018). To obtain remand, Plaintiff must show that "no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." *Thomas S. v. Comm'r of Soc. Sec.*, No. 19-CV-1663, 2021 WL 1293105, at *4 (W.D.N.Y. Apr. 7, 2021). Plaintiff has developed no such argument in his briefing. *See* ECF Nos. 11-1, 15.

### b. Reliance on Lay Opinion

Plaintiff next argues that the ALJ erroneously relied on his lay opinion when he included a sit/stand option in the RFC determination.[6]  *See* ECF No. 11-1 at 22.  Plaintiff notes that "[d]espite the detailed nature of this assessed limitation, the ALJ provided no narrative bridge to tether it to any evidence of record."  *Id.*  The Court concludes that, even assuming the ALJ committed an error as to the sit/stand option, Plaintiff has failed to show prejudice.

At the hearing, Plaintiff testified that he could sit for "[p]robably about ten or 15 minutes" before needing to change position, and "about the same" with respect to standing.  Tr. 40.  In the decision, the ALJ found that Plaintiff required "the option to sit or stand every *20 minutes*."  Tr. 20 (emphasis added).  The ALJ did not expressly discuss why he chose that duration over Plaintiff's estimate.  The Commissioner suggests that the ALJ's chosen duration could be reasonably inferred from Plaintiff's daily activities: "[A]s the ALJ pointed out, the record reflects that Plaintiff performed various household chores, engaged in construction and roofing jobs, helped renovate a bathroom, and rode a motorcycle, each of which would reasonably be expected to entail sitting or standing for periods of at least 20 minutes at a time."  ECF No. 14-1 at 23.  Perhaps that is how the ALJ arrived at a twenty-minute sit/stand option, but the absence of a "discernible rationale" makes it difficult for the Court to conduct "meaningful review" and "raises the specter that the ALJ arbitrarily selected the duration or interpreted the medical evidence based on his own lay judgment."  *MaryAnne V. v. Comm'r of Soc. Sec.*, No. 20-CV-412, 2021 WL 3560584, at *3 (W.D.N.Y. Aug. 12, 2021) (internal brackets and quotation marks omitted); *see*

---

[6] To the extent Plaintiff contends that the ALJ erred merely because he declined to give controlling weight to any one opinion, *see* ECF No. 11-1 at 21, that argument lacks merit.  *See Michael T. v. Comm'r of Soc. Sec.*, No. 19-CV-956, 2021 WL 681287, at *11 (W.D.N.Y. Feb. 22, 2021) ("[C]ourts in this circuit [] have held that failure to give any one opinion controlling weight does not mean that the ALJ substituted his lay opinion.").

*also id.* at \*2 ("[W]here an ALJ includes a highly specific durational limitation, he must have an evidentiary basis for the chosen duration.").

Nevertheless, even if the inclusion of this limitation were erroneous, Plaintiff has failed to demonstrate prejudice warranting remand.  The ALJ reasonably rejected Plaintiff's claims about his physical limitations, including his assertion that he could only "sit and stand for 10 to 15 minutes at a time."  Tr. 21.  The ALJ noted that the record "fail[ed] to document significant and continued treatment for [Plaintiff's neck and back pain] since the alleged onset date."[7]  *Id.*  The few pertinent treatment notes in the record suggested that Plaintiff was not as disabled as alleged: in April 2016, Plaintiff visited an urgent-care facility and was observed to be "in no distress" during his physical examination; and during a March 2017 emergency room visit for rib pain, Plaintiff was likewise observed to be in "no acute distress."  Tr. 266, 425.  Furthermore, Plaintiff's work history and his daily activities—like his ability to ride a motorcycle—cast doubt on his claimed sitting and standing limitations.  *See* Tr. 23, 446.  Indeed, no medical opinion in the record includes a sit/stand option.  *See* Tr. 78, 409.

Remand is not warranted on the basis that the ALJ partially credited Plaintiff's need for a sit/stand option, despite the lack of evidence or medical opinion to support it.  "The fact that a limitation was included despite its absence from any medical opinion means simply that the RFC was more generous than the medical opinions required and where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis

---

[7] In passing, Plaintiff suggests that he was unable to obtain treatment for his physical pain because of his "insurance carrier's refusal to approve an MRI."  ECF No. 11-1 at 27.  The cited treatment notes do not support Plaintiff's claim; instead, they indicate that Plaintiff was not making the effort to obtain the MRI.  *See* Tr. 381 (Plaintiff stated that "he is waiting for insurance to see if they cover CAT scan" but "insurance wants pain killers or Physical Therapy for six weeks"); Tr. 457 (counselor encouraged Plaintiff to "improve his self-care" and "reach out to his doctor about the MRI he is suppose[d] to have"); Tr. 461 (noting Plaintiff's admission that "he has not followed up to get an MRI").

for remand."[8] *Theresa G. v. Saul*, No. 20-CV-362, 2021 WL 1535472, at *5 (N.D.N.Y. Apr. 19, 2021) (internal quotation marks omitted); *see also Colleen K. v. Comm'r of Soc. Sec.*, No. 19-CV-1124, 2021 WL 117994, at *4 (W.D.N.Y. Jan. 13, 2021).

### c.  Treating Physician

In a treatment note dated January 2019, Dr. Young wrote, "[Plaintiff] is appealing for SSI . . . based on his chronic pain.  He is certainly impaired & disabled from that." Tr. 501.  The ALJ gave "little weight" to this opinion, noting that the issue of disability is reserved to the Commissioner, that Dr. Young was a mental-health provider who did not treat Plaintiff for "physical problems," and that his conclusion was "inconsistent with the overall record." Tr. 25. Plaintiff contends that the ALJ should have recontacted Dr. Young to determine the basis for his conclusion and to obtain a functional assessment.  *See* ECF No. 11-1 at 24-25.  The Court is not persuaded.

"[T]he ALJ's duty to develop the record is not absolute, and, as such, does not arise where the ALJ already possesses sufficient evidence to make an RFC determination."  *Linda L. v. Comm'r of Soc. Sec.*, No. 19-CV-1129, 2021 WL 2269504, at *4 (W.D.N.Y. June 3, 2021) (citing 20 C.F.R. § 404.1520b(a)).  "Consistent with that notion, the regulations do not mandate that the ALJ recontact a claimant's treating physician in each case.  Instead, they provide that the ALJ *may* do so, and only when the record is inconsistent or insufficient to determine whether the claimant is disabled." *Id.*  In this case, the ALJ had before him hundreds of pages of medical evidence, two opinions from consultative examiners, two opinions from state disability examiners, a medical source statement from Plaintiff's mental-health clinic, along with Plaintiff's own testimony and

---

[8] For the same reason, the Court rejects Plaintiff's argument that the ALJ erred by giving great weight to the opinion of R. Dickerson, M.D., but also including additional limitations beyond those Dr. Dickerson identified.  *See* ECF No. 11-1 at 19.

written statements about his symptoms.  This documentation "was sufficient for the ALJ to objectively determine" Plaintiff's RFC.  *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (summary order).  Given the available evidence, the ALJ was under no duty to obtain a functional assessment from Dr. Young.  *See Elnora C. v. Comm'r of Soc. Sec.*, No. 19-CV-1072, 2021 WL 695062, at *6 n.7 (W.D.N.Y. Feb. 23, 2021) ("[T]here is no duty to re-contact a treating physician to obtain a function-by-function analysis of plaintiff's impairments where consultative physicians assess a plaintiff's functional limitations and provide an opinion on them.").  And there was no need to recontact Dr. Young to determine the basis for his conclusion, as the ALJ did not reject Dr. Young's opinion because it lacked a sufficient basis.  Rather, the ALJ rejected the opinion because Dr. Young was not treating Plaintiff for chronic physical pain, and because that conclusion was inconsistent with the record as a whole.  *See Harmon v. Comm'r of Soc. Sec.*, No. 17-CV-171, 2018 WL 1586750, at *4 (W.D.N.Y. Apr. 2, 2018) (stating that an ALJ may be required "recontact a treating physician to clarify his or her opinion where it contains conflict or ambiguity that must be resolved [or] the report does not contain all the necessary information," but concluding that rule did not apply where "the ALJ discounted [the physician's] opinion because it was inconsistent with the record as a whole").

Plaintiff also asserts that the ALJ's reasons for rejecting Dr. Young's opinion were erroneous.  *See* ECF No. 11-1 at 26-27.  He suggests that Dr. Young "was not opining outside of his area of treatment" because his chronic physical pain was intertwined with the mental health issues that Dr. Young treated.  *Id.* at 26.  That may be true, but the ALJ's point still stands: Dr. Young was not as well-positioned to opine on Plaintiff's physical impairments because that was not his area of treatment.  *Cf.* 20 C.F.R. § 404.1527(c)(2)(ii) ("[I]f your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her

medical opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain."). Plaintiff also contends that Dr Young's opinion was consistent with some of the evidence in the record, including a number of treatment notes and the medical source statement issued by the mental health clinic. But again, remand is not warranted simply because some record evidence supports Plaintiff's position; he must show that "no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." *Thomas S.*, 2021 WL 1293105, at *4. He has developed no such argument. *See* ECF No. 11-1 at 26-27; ECF No. 15.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 6, 2022
    Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York